IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BARBARA MURRAY, o/b/o C.S.M., )
)
    Plaintiff, )
) CIVIL ACTION NO. 2:10cv271 -WC
    v. )
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
    Defendant. )

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Barbara Murray ("Plaintiff") applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (2000), on behalf of her daughter, C.S.M. ("Claimant"), alleging she was disabled. Plaintiff's application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (the Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff then sought review in the District Court. *See Murray v. Astrue*, Case No. 2:07-cv-654-SRW

---

    [1]    Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

(docketed July, 18, 2007). On September 24, 2008, this Court, the Honorable Susan Russ Walker, United States Magistrate Judge, reversed the decision of the Commissioner and remanded for additional administrative proceedings. *See* Memorandum Opinion (Doc. #20), 2:07-cv-654-SRW.[2] On remand, the Commissioner conducted a new hearing, after which the ALJ again denied Plaintiff's claim. The Appeals Council also denied review. Tr. 164-65. Plaintiff has again sought review in this Court pursuant to 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #7); Def.'s Consent to Jurisdiction (Doc. #8). Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the Commissioner's decision.

## II.   STANDARDS FOR CHILDHOOD AND ADULT DISABILITY CLAIMS[3]

Under 42 U.S.C. § 1382c(a)(3)(C)(i), a person under the age of 18 is disabled (and hence entitled to disability benefits) if the person "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous

---

[2] The basis for the remand was Judge Walker's finding that the ALJ failed to sufficiently articulate his reasons for discounting the credibility of the subjective testimony of Plaintiff and C.S.M. during the administrative hearing.

[3] Because the claimant reached the age of eighteen during the course of remand proceedings, the ALJ considered Plaintiff's claim pursuant to both the childhood and adult disability standards. Tr. 179-182. Consequently, the undersigned reviews the ALJ's application of both standards.

period of not less than 12 months."[4]  In determining whether a child is disabled, the Commissioner employs the following three-step sequential evaluation process. *See* 20 C.F.R. § 416.924 (2007).

> (1) Is the person presently not engaged in substantial gainful activity?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments"), and also meet the twelve-month duration requirement?[5]

If the answer to each of the three questions is "yes," then the child is entitled to benefits.

In order for a severe impairment to meet or equal one of the listed impairments, the impairment must "cause[] marked and severe functional limitations" for the child claimant. 20 C.F.R. § 416.911(b).

> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations meet[], medically equal[], or functionally equal[] the [L]istings. A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations are at least of equal medical significance to those of a listed impairment.

*Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004) (internal

---

[4]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[5]  Part A of the Listing of Impairments applies to children and adults; Part B applies to children only.  In dealing with a child's case, the Commissioner looks first to Part B, then to Part A.  20 C.F.R. § 416.925(b); Wilkinson v. Bowen, 847 F.2d 660, 661 (11th Cir. 1987).

quotations and citations omitted). Even if the child's impairment does not meet or medically equal a listing, it may still functionally equal a listing. In assessing functional equivalence, the ALJ considers the "degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

> (I) Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v) Caring for [one]self; and
> (vi) Health and physical well-being."

*Id.* at 1279. "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." *Id.* (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." *Id.* (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)). A marked limitation is one that interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme limitation" is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

There is a separate framework for claims of adult disability. Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[6]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step

---

[6] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[7] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### III.   SCOPE OF REVIEW

The standard of review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial

---

[7] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead, must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The Court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## IV. ADMINISTRATIVE PROCEEDINGS

The Claimant was thirteen years old at the time the application for benefits was filed, and had reached the age of eighteen at the time of the second hearing before the ALJ. Tr. 183. In his decision, the ALJ first evaluated Claimant's disability pursuant to the child disability determination guidelines. The ALJ found that Claimant had not engaged in substantial gainful activity at any time during the period under adjudication (Step 1). Tr. 183. The ALJ next found that, before reaching the age of eighteen, Claimant had the following severe impairments: "oppositional defiant disorder, borderline intellectual functioning to low average intelligence, history of psychotic disorder, rule-out attention deficit hyperactivity disorder, and learning disabilities" (Step 2). Tr. 183. At Step Three, the

ALJ concluded that, prior to Claimant reaching the age of eighteen, Claimant's impairments did not alone or in combination meet or medically or functionally equal in severity the criteria for any impairment in the Listing of Impairments. Tr. 190-99. Consequently, the ALJ found that, prior to reaching the age of eighteen, Claimant was not disabled. Tr. 199.

In addition to the ALJ's prior finding that Plaintiff had not engaged in substantial gainful activity, in applying the five-step adult disability determination framework, the ALJ found that Plaintiff continues to have the severe impairments which existed prior to age eighteen and has not been encumbered with additional severe impairments since reaching eighteen (Step Two). Tr. 199-200. The ALJ next found that "[s]ince attaining age 18, Claimant has not had an impairment or combination of impairments that meets or medically equals a listed impairment." (Step Three). Tr. 200. Next, the ALJ found that

> since attaining age 18, when compliant with medication, Claimant has had the residual functional capacity to perform work within the parameters specified in the MSSM completed by Dr. King . . . commensurate with the capabilities of an individual with borderline intellectual functioning. Any work performed by Claimant must be simple, unskilled, repetitive, routine, and low stress in nature. Such work must be suited for an individual who has moderate limitations responding to customers or the general public, mild limitations responding to supervisors, moderate limitations responding to co-workers, mild limitations with responding to customary work pressures, mild limitations in performing simple one and two step functions, moderate limitations in using judgment in detailed or complex work related decisions, no limitation in understanding and carrying out simple one step instructions, mild limitation in understanding and carrying out complex instructions, no limitation in maintaining concentration, persistence, and pace for two hours, moderate limitation of the ability to maintain social functioning, and mild limitation in the ability to maintain activities of daily living.

Tr. 200. After consulting with a vocational expert, the ALJ next found that Claimant is

"capable of performing her current past relevant work as a Fast Food Worker (unskilled, light), as well as other work that exists in significant numbers in the regional and national economies" (Step Four).  Tr. 200-01.  In addition to her work as Fast Food Worker, the ALJ identified other representative occupations which Claimant's RFC permits her to perform, including "Assembler," "Inspector/Checker," and "Machine Tender."  Tr. 201. Accordingly, the ALJ determined that "Claimant has not been under a disability . . . since April 6, 2009, the day Claimant attained age 18, through the date of this decision"  (Step Five).  Tr. 201.

## V.   PLAINTIFF'S CLAIM

Plaintiff presents one issue for this Court's review:  whether "the ALJ committed reversible error in failing to provide specific rationale for rejecting the testimony provided by [Claimant] and her mother."  Pl.'s Brief (Doc. #12) at 10.

## VI.   ANALYSIS

Plaintiff contends that the "Commissioner's decision should be reversed because the ALJ committed reversible error in failing to provide specific rationale for rejecting the testimony provided by [Claimant] and her mother."  *Id.*[8]  Plaintiff argues that "the ALJ again fail[ed] to explain his finding that [Claimant] and her mother are not credible, but instead summarizes the evidence of record and offers possible explanations for these events."  Pl.'s Brief (Doc. #12) at 12.  Defendant maintains that the "ALJ complied with agency regulations

---

[8]   Notably, this is the precise error which caused Judge Walker to remand this matter to the Commissioner in 2008.

9

and Eleventh Circuit case law when he found not fully credible [Claimant's] and her mother's allegations of disabling functional limitations." Def.'s Brief (Doc. #13) at 4. Defendant further asserts that the "ALJ properly found not fully credible Plaintiff's and her mother's testimony that her misbehavior and difficulty getting along with others were disabling limitations, and he articulated explicit and adequate reasons for doing so." *Id.* at 6.

The Court of Appeals for the Eleventh Circuit has articulated its "pain standard," governing the evaluation of a claimant's subjective testimony about pain or other disabling symptoms, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The ALJ evaluates the "claimant's subjective testimony" only after the claimant satisfies the first and one of the alternate portions of the second prong of the "pain standard." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). Where the ALJ proceeds to consider the claimant's subjective testimony about pain or other disabling conditions, the ALJ's decision to reject or discredit such testimony is reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If the ALJ determines to discredit subjective pain testimony and such testimony is crucial to the claimant's assertion of disability, the ALJ "must articulate specific

10

reasons for questioning the claimant's credibility." *Id.* "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotations and citations omitted).

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. *The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.*

Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996)(emphasis added).

At the hearing before the ALJ, Claimant testified, in relevant part, about various matters related to her purportedly disabling functional limitations. Specifically, Plaintiff testified about two school place incidents in which her conduct resulted in school or legal discipline, Tr. 315-317, about difficulties in dealing with co-workers and customers at her place of employment, Tr. 317-20, about feeling depressed, Tr. 320-21, about anger management problems and violent expression, Tr. 321-22, about hearing voices that instruct

her to act violently, Tr. 322 & 323-324, about occasionally wishing she were dead, Tr. 322, about threatening harm to herself with knives, Tr. 324, about once actually cutting herself during such an episode, Tr. 324-25, and about difficulty getting along with others at school, Tr. 328-29.  Claimant's mother testified that Claimant's attention span is poor and that she is prone to violent outbursts and is difficult to calm, Tr. 329-30, that she does not cope with authority well, Tr. 330, that she often expresses that she wishes she were dead, Tr. 329-30, that Claimant is "doing all right" at her job despite some of her difficulties dealing with customers and co-workers, Tr. 333, and that she is struggling with "math and ROTC" at school, Tr. 333.  The ALJ appropriately summarized Claimant's and her mother's testimony in his opinion.  Tr. 191-192.

In this case, the ALJ properly stated the standards governing his evaluation of subjective testimony and cited to 20 C.F.R. § 416.929, "which contains the same language regarding the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard." *Wilson*, 284 F.3d at 1225; *see* Tr. 191.  Then, upon reviewing the record and relevant testimony, the ALJ determined that "the allegations of the mother and Claimant are not fully credible."  Tr. 192.  Thus, the ALJ implicitly found that Claimant's impairments "could reasonably be expected to produce Claimant's pain or other symptoms," Tr. 191, but that the subjective testimony about the severity and limiting effects of those symptoms was not fully credible.  Accordingly, the ALJ was required to "articulate specific reasons for questioning the claimant's credibility" and those reasons must be supported by substantial evidence.

The ALJ provided numerous reasons for his credibility finding. First, the ALJ remarked that the subjective testimony was "disproportionate to the objective medical evidence. The record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of limitations alleged. There are not any diagnostic studies demonstrating abnormalities that might cause such severe symptoms." Tr. 192. The ALJ observed that the "allegations of disability primarily concern misbehaver [sic] and difficulty getting along with others." Tr. 192. Accordingly, the ALJ examined the specific incidents of such conduct alluded to by Claimant and her mother in their testimonies. The ALJ referenced Claimant's mother's testimony at the first hearing that Claimant's prior trouble with juvenile authorities resulted from her "mistakenly" carrying a knife to school several years ago. Tr. 192. The ALJ reasoned that, because the incident was a "mistake" on the part of the Claimant, "it is not indicative of intent to use the knife to harm others." Tr. 193. The ALJ further observed that, while Claimant was disciplined for fighting at school a few years ago, such behavior "is not terribly unusual" and, in any event, Claimant's testimony that "the other child started the fight" and that she "was merely defending herself," *see* Tr. 145, mitigated the allegation that her inability to get along with others is disabling. Tr. 193. The ALJ found that "a lone incident of such behavior (even assuming Claimant started the fight) is not indicative of 'disability'; rather it is a sign of immaturity and poor judgment." Tr. 193. The ALJ further observed that Claimant's testimony about problems getting along with co-workers and customers was mitigated somewhat by the fact that Plaintiff was still employed at the time of the hearing. Tr. 193. The ALJ also addressed

Claimant's testimony about hearing voices. Relying upon the testimony of the medical expert, the ALJ found that Claimant's hearing voices is more likely the result of a conduct disorder rather than a psychotic disorder. Tr. 193. Indeed, the medical expert testified that, based upon his review of the record, there is "nothing which would substantiate a psychotic disorder." Tr. 339. Rather, he testified, it appears Claimant hears "retaliatory voices" in a behavioral response to certain stimuli. Tr. 339, 345-46. Finally, the ALJ observed that Claimant's ability to "handle a difficult, stressful environment" at her place of employment indicates that her impairments are not disabling. Tr. 193. Indeed, the medical expert testified that Claimant's continued employment may indicate that her "medication is providing some assistance to her in stabilizing her, her moods a little bit," that she may be "developing a degree of maturity and understanding that consequences for acting out can be pretty significant," and/or that she may be "developing some, some improved social skills and social and interpersonal skills." Tr. 341. In sum, the ALJ found that "[a]ll of these factors convince me that the claimant's testimony and other testimony given by the mother is <u>not fully credible</u>." Tr. 193 (emphasis in original).

Plaintiff asserts that the numerous reasons given by the ALJ for his credibility determination are inadequate because they are either incorrect, irrelevant, or are the result of his own "personal assessment on the veracity of their statements" and "prefacing his opinion on the truth of the witnesses." Pl.'s Brief (Doc. 312) at 13. However, it is the ALJ's function to render a credibility judgment based on his own assessment of the testimony in light of the entire record. This task inherently requires the ALJ to make "personal

assessments" and render opinions about the veracity and credibility of witnesses. Moreover, the ALJ is entitled to base his judgment, as was done here, in part on inconsistencies between witness testimony and other evidence - or the lack thereof - in the record. Furthermore, despite Plaintiff's contention that the ALJ's articulated distinction between psychotic and behavioral disorders misses the point, Pl.'s Brief (Doc. #12) at 13-14, the Court finds the ALJ's point well taken. Where evidence in the record supports a finding that perhaps Plaintiff's behavior is improving with age and medication and/or treatment, evidence that her being incited by "voices" is a behavioral reaction rather than a psychotic disorder supports the finding that her impairments are not as severe as portrayed in her testimony or disabling.

Plaintiff also challenges the ALJ's finding that her testimony at the prior hearing about Claimant's purported hyperactivity was offset by the fact that she also testified that she had not given Claimant her medicine that day and by the fact that "[h]er teachers had not complained about her being very active." Tr. 193. While Plaintiff contends that the medical expert's testimony about one of the medicines prescribed Claimant supports the mother's testimony about hyperactivity, *see* Pl.'s Brief (Doc. #12) at 13, more importantly, such testimony, in conjunction with the lack of complaints observed by the ALJ, supports the medical expert's larger point about the improvement in Claimant's condition through medicine and maturation. The Court also finds it noteworthy that, while Plaintiff quibbles with the ALJ's rationale in discrediting various aspects of the subjective testimony, Plaintiff does not substantively address the ALJ's larger point that the subjective testimony was "disproportionate to the objective medical evidence" and that the record lacks "objective

15

signs and findings that could reasonably be expected to produce the degree and intensity of limitations alleged." Tr. 192. Rather than citing to any objective medical evidence which tends to refute the ALJ's finding, Plaintiff merely dismisses the ALJ's observation as a "conclusory statement." Pl.'s Brief (Doc. #12) at 12.

In sum, the ALJ provided numerous reasons for his decision to discredit the testimony of Claimant and her mother. These reasons are, for the most part,[9] adequate and are supported by substantial evidence, and are "enough to enable [the Court] to conclude that [the ALJ] considered [Claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1210 (citations omitted). Accordingly, Plaintiff's claim that the ALJ reversibly erred in failing to provide adequate reasons for his credibility determination is without merit.

## VII. CONCLUSION

The Court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is supported by substantial evidence and is AFFIRMED. A separate judgment will issue.

---

[9] Some of the reasons given by the ALJ for his decision to discredit the credibility of Claimant and her mother are not obviously relevant to the credibility assessment. For example, the ALJ's observation about the "unique definition of 'disability' contemplated by the Social Security Act and derivative regulations" and Plaintiff's general unfamiliarity with that concept, *see* Tr. 192, does not appear to bear directly on the credibility of subjective testimony in this case. Likewise, the ALJ's observation that Claimant has had "crying spells" after being hit by her mother, Tr. 193, and that her mother has never called the police in response to Claimant's behavior, Tr. 193, does not appear germane to the issue of credibility. However, these examples not withstanding, the Court finds that the ALJ articulated numerous other adequate reasons for his decision to partially discredit the testimony of Claimant and her mother.

DONE this 7th day of March, 2011.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE